## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY
## CAMDEN DIVISION

|  |  |
|---|---|
| **LASHELLE L. BELL,**<br>**on behalf of herself and all others**<br>**similarly situated,**<br><br>        **Plaintiff,**<br><br>**v.**<br><br>**PHH MORTGAGE**<br>**CORPORATION,**<br>**as successor by merger to**<br>**OCWEN LOAN SERVICING, LLC.**<br><br>        **Defendant.** | **Case No. 1:20-CV-03187** |

### CLASS ACTION COMPLAINT

Plaintiff LASHELLE L. BELL, on behalf of herself and all others similarly situated, alleges violations of the Texas Fair Debt Collection Act ("TCDA") and breach of contract, against PHH Mortgage Corporation, as successor by merger to OCWEN LOAN SERICING, LLC ("Defendant" or "PHH").

1.     Borrowers across the country struggle enough to make their regular mortgage payments without getting charged extra, illegal fees when they try to pay by phone or online ("Pay-to-Pay fees"). PHH routinely and systematically violates the TDCA and breaches uniform covenants in mortgages insured by the Federal

Housing Administration ("FHA") by assessing fees to borrowers that are either not permitted by law or are expressly prohibited by their mortgage agreements. Here, PHH charges borrowers between $10.00–19.50 for making their mortgage payments online or over the phone.  On information and belief, only a small fraction of the fee is paid to a third-party payment processor, and PHH collects the remainder as profit.

2.      PHH is one of the largest originators and servicers of mortgages in the United States. PHH abuses its position as a mortgage servicer by charging Pay-to-Pay fees, despite those fees not being expressly authorized in the terms of standard mortgage agreements, in violation of the TDCA.

3.      Moreover, as a servicer of FHA-insured loans, PHH is bound by the rules and regulations of the Secretary of Housing and Urban Development ("HUD"), and those rules are incorporated by reference into all FHA-insured mortgages. Under FHA servicing rules, a mortgage servicer may not charge a borrower any fee not authorized by the FHA. The FHA has not authorized Pay-to-Pay fees.

4.      Plaintiff Lashelle Bell has incurred a Pay-to-Pay fee of approximately $15.00 each time she made a payment by phone.

5.      On behalf of herself and all others similarly situated, Plaintiff seeks injunctive, declaratory, and compensatory relief against PHH for its violations of the Texas Debt Collection Act and breaches of contract.

**PARTIES**

6.    Plaintiff Lashelle Bell is a citizen of the State of Texas.

7.    Defendant PHH Mortgage Corporation is incorporated in and has its principal place of business in the State of New Jersey and is thus a citizen of the State of New Jersey.

**JURISDICTION AND VENUE**

8.    PHH conducts business across the country from its principal place of business in this District.

9.    Venue is proper in this District because a substantial part of the acts or omissions giving rise to Plaintiff's causes of action occurred here and PHH is located here.

10.    Plaintiff seeks to represent two Classes of borrowers with mortgages serviced by PHH that include all borrowers with properties in the State of Texas and all individuals in the United States with FHA-insured loans. Each of these Classes includes members who are citizens of states other than New Jersey. Therefore, minimal diversity exists between the parties in this action.

11.    The amount in controversy, exclusive of costs and interest, exceeds $5,000,000.00. PHH is one of the largest mortgage lender and servicer in the United States and, more specifically, one of the largest originators and servicer of FHA-insured mortgages. The Classes in this lawsuit are believed to consist of hundreds of

thousands of members. To date, Plaintiff has incurred no less than $15.00 in improper Pay-to-Pay fees, and PHH collects fees in a range of $10.00 to $19.50. Thus, the amount-in-controversy in this action, exclusive of costs and interest, exceeds the amount-in-controversy requirement of 28 U.S.C. § 1332(d).

## COMMON FACTUAL ALLEGATIONS

### The Texas Debt Collection Act

12.    The Texas Debt Collection Act ("TDCA") prohibits a debt collector from "us[ing] unfair or unconscionable means" in the collection of a consumer debt. Tex. Fin. Code § 392.303(a).

13.    PHH is a *debt collector* under the TDCA because it is "a person who directly or indirectly engages in debt collection …." *Id.* at § 392.001(6).

14.    PHH engages in *debt collection*, which the TDCA defines as "an action, conduct, or practice in collecting, or in soliciting for collection, consumer debts that are due or alleged to be due a creditor." *Id.* at § 392.001(5).

15.    A *consumer debt* under the TDCA is "an obligation, or an alleged obligation, primarily for personal, family, or household purposes and arising from a transaction or alleged transaction." *Id.* at § 392.001(2).

16.    As "an individual who has a consumer debt," each Plaintiff is a *consumer* under the TDCA. *Id.* at § 392.001(1).

17.     The Pay-to-Pay fees PHH charged are not authorized by Plaintiffs' deed of trust—or, indeed, any standard deed of trust or mortgage.

18.     By charging those fees, PHH employed the unfair and unconscionable practice of "collecting or attempting to collect interest or a charge, fee, or expense incidental to the obligation unless the interest or incidental charge, fee, or expense is expressly authorized by the agreement creating the obligation or legally chargeable to the consumer[.]" *Id.* at § 392.303(a)(2).

## FHA SERVICING RULES

19.     The Federal Housing Administration, an agency within the United States Department of Housing and Urban Development, "provides mortgage insurance on loans made by FHA-approved lenders throughout the United States and its territories."[1] The FHA "is one of the largest insurers of mortgages in the world, insuring more than 46 million mortgages since its inception in 1934."[2]

20.     The FHA provides incentives to private lenders to make loans to would-be homebuyers whose creditworthiness and inability to contribute a significant down payment make it difficult for them to obtain a home loan on reasonable terms.

---

[1]     HUD.gov    –    The    Federal    Housing    Administration, https://www.hud.gov/program_offices/housing/fhahistory (last visited on November 27, 2019).

[2] *Id.*

21.    To achieve that goal, "FHA mortgage insurance provides lenders with protection against losses if a property owner defaults on their mortgage. The lenders bear less risk because FHA will pay a claim to the lender for the unpaid principal balance of a defaulted mortgage."[3]

22.    The FHA restricts who can make and service FHA loans. "Only FHA-approved Mortgagees may service FHA-insured Mortgages," and those "Mortgagees may service Mortgages they hold or that are held by other FHA-approved Mortgagees." Ex. 2 at 3, § III.A.1.

23.    FMC is an FHA-approved Mortgagee.

24.    As an FHA-approved Mortgagee, FMC must annually "acknowledge that the Mortgagee is now, and was at all times throughout the Certification Period, subject to all applicable HUD regulations, *Handbooks*, Guidebooks, Mortgagee Letters, Title I Letters, policies and requirements, as well as Fair Housing regulations and laws including but not limited to 24 CFR § 5.105, Title VIII of the Civil Rights Act of 1968 (the Fair Housing Act) and Title VI of the Civil Rights Act of 1964."[4]

25.    HUD's servicing requirements restrict the fees and charges an FHA-approved Mortgagee may collect from the typically lower-income FHA borrower.

---

[3] *Id.*

[4] *See*, FHA Lender Annual Certifications: Supervised and Nonsupervised Mortgagees, Changes Implemented 8/1/2016, https://www.hud.gov/sites/documents/SFH_COMP_SUPERNONSUPER.PDF (last visited on November 27, 2019) (emphasis added).

Handbook 4000.1: *FHA Single-Family Housing Policy Handbook*, https://www.hud.gov/sites/dfiles/OCHCO/documents/4000.1hsgh.pdf (last accessed by counsel on _____) (the "FHA Handbook").

26.     In the FHA Handbook, HUD makes clear "[t]he Mortgagee must fully comply with all of the following standards and procedures when servicing a Mortgage insured by the Federal Housing Administration[.]" *Id.*, at 3, § III.A.

27.     These mandatory restrictions include limits on the types and amounts of fees and charges an FHA-approved Mortgagee may collect from a borrower.

28.     FHA-insured mortgages contain uniform covenants.

29.     In one such uniform covenant, the parties to the mortgage agree that "Lender may collect fees and charges ***authorized*** by the Secretary [of Housing and Urban Development]." Ex. 1 at ¶ 13, Ex. 2 at ¶ 8, and Ex. 3 at ¶ 8 (emphasis added).

30.     This provision incorporates by reference HUD's limits on allowable fees.

31.     In a section entitled "Servicing Fees and Charges," the FHA Handbook establishes what fees and charges authorized by the HUD. Ex. 4 at 5, § III.A.1.f.

32.     Specifically, the HUD Handbook defines "Allowable Fees and Charges a[s] those costs associated with the servicing of the Mortgage that are permitted to be charged to the Borrower," and defines "Prohibited Fees and Charges a[s] those

costs associated with the servicing of the Mortgage that may not be charged to the Borrower." *Id.*, at § III.A.1.f.i.

33.     HUD permits FHA-approved Mortgagees to "collect certain reasonable and customary fees and charges from the Borrower after the Mortgage is insured and as ***authorized*** by HUD below." *Id.*, at § III.A.1.f.ii.(A) (emphasis added).

34.     A fee or charge is authorized if it meets three specific criteria: the fee or charge "must be" (a) "reasonable and customary for the local jurisdiction"; (2) "based on actual cost of the work performed or actual out-of-pocket expenses and not a percentage of either the face amount or the unpaid principal balance of the Mortgage"; ***and*** (c) "within the maximum amount allowed by HUD." *Id.* at pp. 5–6, § III.A.1.f.ii.(A) (emphasis added).

35.     Appendix 3.0 of the FHA Handbook contains an exhaustive list of the servicing fees and charges authorized by HUD and the maximum amounts that may be charged for such fees.[5]

36.     Pay-to-Pay fees are not on that list.

37.     In the absence of HUD authorization, FHA-approved Mortgagees are prohibited by contract from charging for alleged costs associated with servicing an FHA-insured mortgage.

---

[5] In the PDF version of the FHA Handbook, the term "maximum amount allowed by HUD" contains a hyperlink that, when clicked, brings the reader to Appendix 3.0.

38.    Instead, if the FHA-approved Mortgagee wants authorization to collect additional fees and charges, it "may request approval . . . for any fee, charge, or unusual service not specifically mentioned in this *SF Handbook*." *Id.* at 6, § III.A.1.f.ii.(B).

39.    If the fee or charge is approved, "[t]he Homeownership Center (HOC) will determine the maximum amount of any fee based on what is reasonable and customary in the area." *Id.*

40.    Because Pay-to-Pay fees do not appear on the list of servicing fees and charges and have not been assigned a "maximum amount allowed" based on what HUD deems "reasonable and customary in the area," FHA-approved Mortgagees are prohibited by contract from collecting them from the FHA borrower.

41.    Moreover, even were an FHA-approved Mortgagee to receive authorization to charge a Pay-to-Pay fee, the charge to the borrower must still be "based on actual cost of the work performed or actual out-of-pocket expenses"—in short, the servicer cannot collect such fees to create a profit center. *Id.*, at 6, § III.A.1.f.ii.(A).

42.    Based upon information and belief, the Pay-to-Pay fees that FMC charges borrowers exceed its out-of-pocket costs by several hundred percent, and thus violate mandatory HUD servicing rules that are incorporated into all FHA-insured mortgages.

## PLAINTIFF'S ALLEGATIONS

43.    Plaintiff Lashelle Bell executed a standard form FHA deed of trust to purchase her home in West Columbia, Texas. Ex. 1.

44.    PHH negotiated with the FHA for an assignment of servicing rights and took an assignment of rights on Plaintiff's loan.  In doing so, PHH agreed only to collect fees authorized by the deed of trust.

45.    Under the FHA deed of trust section, PHH is an assignee of the mortgage who is bound by all covenants therein.

46.    Section 13 of her form FHA-insured deed of trust, entitled "Loan Charges," states, "Lender may collect fees and charges ***authorized*** by the Secretary [of Housing and Urban Development]." *Id.* at 8 (emphasis added).

47.    That section further provides that "Lender may not charge fees that are expressly prohibited by this Security Instrument, or by Applicable Law." *Id.*

48.    Section 15 of her form FHA-insured deed of trust provides further that "This Security Instrument shall be governed by Federal law and the law of the jurisdiction in which the Property is located." *Id.* at 9.

49.    As alleged above, the TDCA and FHA rules prohibit charging Pay-to-Pay fees.

50.    And even if a servicer had authorization to collect such a fee, FHA rules prohibit FHA-approved mortgage servicers from passing on to borrowers more than the servicer's out-of-pocket costs for providing the service.

51.    On information and belief, which can be confirmed through review of Defendant's documents, PHH reaps substantial profits from imposing illegal Pay-to-Pay fees.  It is believed the cost of the Pay-to-Pay transactions is approximately $0.40 to PHH, while it up-charges Plaintiff and others $10.00 to $19.50 per transaction.

52.    PHH has collected at least one Pay-to-Pay fee from Plaintiff and when Plaintiff has made such payment, PHH charged her a fee of approximately $15.00.

53.     That fee violates the TDCA and FHA rules.

54.    On or about October 29, 2019, Plaintiff made a written pre-suit demand upon PHH.

55.    PHH was given an opportunity to cure Plaintiff's claims, but took no corrective action.

## CLASS ALLEGATIONS

56.    Plaintiff brings this action on behalf of herself and all others similarly situated pursuant to Fed. R. Civ. P. 23. This action satisfies the numerosity, commonality, typicality, adequacy, and predominance requirements of Rule 23(a).

57.    Plaintiff seeks certification of the following classes (collectively, the "Classes"):

**The Texas Debt Collection Practices Act Class (the "TDCA Class")**

All persons in the United States (1) with property located in the State of Texas, (2) secured by a loan that is or was serviced by PHH, (3) who were charged one or more Pay-to-Pay fee, and (4) whose Security Instrument did not expressly authorize the collection of a Pay-to-Pay fee.

**The FHA Pay-to-Pay Class (the "FHA Pay-to-Pay Class")**:

All persons in the United States (1) with an FHA-insured mortgage (2) that is or was serviced by PHH (3) who were charged one or more Pay-to-Pay fee, and (4) whose mortgages contained language the same as or substantially similar to the uniform covenants in the Security Instrument.

58.    Plaintiff reserves the right to modify or amend the proposed class definitions before the Court determines whether certification is appropriate.

59.    Excluded from the Classes are Defendant, and Defendant's parents, subsidiaries, affiliates, officers and directors, any entity in which Defendant has a controlling interest, all mortgagors who make a timely election to be excluded, governmental entities, and all judges assigned to hear any aspect of this litigation, as well as their immediate family members, and members of the staffs of the judges to whom this case should be assigned.

60.    The members of the Classes are so numerous that joinder is impractical. While the exact number of members of the Classes cannot be determined without discovery, Plaintiff believes that the Classes consist of thousands of members, the identity of whom, upon information and belief, can be readily determined upon review of records maintained by Defendant.

61.    Plaintiff's claims are typical of the claims of other members of the Classes, in that they arise out of the same acts of PHH, namely assessing fees to borrowers that are not permitted by contract or Texas law.  Plaintiff has suffered the harms alleged and has no interests antagonistic to the interests of any other member of the Classes.

62.    There are numerous questions of law and fact common to the Classes and those common questions predominate over any questions affecting only individual members of the Classes.

63.    The predominating common questions of law and fact include:

a.    Whether, and in what amount, PHH may charge a Pay-to-Pay fee to borrowers with FHA-insured deeds of trust and mortgages (collectively, "Security Instruments");

b.    Whether charging such fees violated HUD rules and regulations;

c.    Whether charging such fees violates provisions of the Plaintiff's Security Instrument;

d.    Whether charging Pay-to-Pay fees violates the Texas Debt Collection Practices Act;

e.    What is the proper method or methods by which to measure damages caused by PHH's breaches of the standard terms of FHA Security Instruments; and

f.    What is the proper method or methods by which to measure damages caused by PHH's violations of the TDCA.

64.    Plaintiff is committed to the vigorous prosecution of this action and has retained competent counsel experienced in the prosecution of class actions and, in particular, class actions on behalf of consumers and against financial institutions. Accordingly, Plaintiff is an adequate representative and will fairly and adequately protect the interests of the members of the Classes.

65.    A class action is superior to other available methods for the fair and efficient adjudication of this controversy.  Since the amount of each of the Class Member's claims are small relative to the complexity of the litigation, and due to the financial resources of PHH, no member of the Classes could afford to seek legal redress individually for the claims alleged herein.  Therefore, absent a class action, the members of the Classes will continue to suffer losses and PHH's misconduct will proceed without remedy.

66.    Even if members of the Classes could afford such individual litigation, the court system could not. Given the complex legal and factual issues involved,

individualized litigation would significantly increase the delay and expense to all parties and to the Court. Individualized litigation would also create the potential for inconsistent or contradictory rulings. By contrast, a class action presents far fewer management difficulties, allows claims to be heard which might otherwise go unheard because of the relative expense of bringing individual lawsuits, and provides the benefits of adjudication, economies of scale, and comprehensive supervision by a single court.

67.    Alternatively, certification is appropriate pursuant to Fed. R. Civ. P. 23(b)(2) because it is clear that declaratory and injunctive relief is appropriate respecting the Class as a whole.

## CLAIMS FOR RELIEF

### COUNT I: Violation of the Texas Debt Collection Practices Act
(On behalf of the TDCA Class)

68.    Plaintiff incorporates paragraphs 1 through 67.

69.    Plaintiff's deed of trust secured the note she took out to purchase her residence in the State of Texas, and she is therefore, under the TDCA, a "consumer" who took out a "consumer debt."

70.    PHH is a "debt collector" under the TDCA.

71.    In the process of "debt collection," PHH charged Plaintiff a Pay-to-Pay fee that was incidental to her debt obligation and was not expressly authorized by the agreement creating the obligation.

15

72.    As such, PHH employed unfair and unconscionable means in the collection of a consumer debt, in violation of the TDCA.

73.    On behalf of the TDCA Class, Plaintiff seeks an injunction restraining PHH from charging Pay-to-Pay fees as well as actual damages.

### COUNT II: Breach of Contract
### (On behalf of the FHA Pay-to-Pay Class)

74.    Plaintiff incorporates paragraphs 1 through 67.

75.    Plaintiff and members of the FHA Pay-to-Pay Class have FHA-insured security instruments that are or were serviced by PHH.

76.    Plaintiff performed all conditions precedent to enforcing the terms of her Security Instrument.

77.    PHH improperly charged borrowers Pay-to-Pay fees contrary to the express terms of their contracts.

78.    Moreover, the Pay-to-Pay fees PHH charged exceeded its out-of-pocket costs by several hundred percent.

79.    As a proximate cause of that breach, Plaintiff and members of the FHA Pay-to-Pay Class have paid fees that should not have been assessed against them and which PHH was not entitled to collect.

80.    On behalf of the FHA Pay-to-Pay Class, Plaintiff seeks declaratory, injunctive, and compensatory relief.

## <u>PRAYER FOR RELIEF</u>

WHEREFORE, Plaintiff, on behalf of herself and others similarly situated, respectfully requests that this Court:

1.    Determine that this action may be maintained as a class action under Fed. R. Civ. P. 23, that Plaintiff is a proper class representative, and that her counsel are appointed Class Counsel;

2.    Award compensatory damages and restitution in the amount of all Pay-to-Pay fees charged to the TDCA Class and the FHA Pay-to-Pay Class, and interest on those fees, improperly charged to members of those Classes;

3.    Award actual damages in an amount according to proof;

4.    Award injunctive relief requiring Defendant to cease collection of all improperly charged fees that have been charged to, but not yet paid by, Plaintiff and members of the Classes;

5.    Award injunctive relief to enjoin Defendant's wrongful acts and further violations of Plaintiff's and the Classes' rights, including but not limited to requiring Defendant to implement procedures to ensure it ceases charging the improper fees identified in this Amended Complaint;

6.    Award pre-judgment interest at the maximum rate permitted by applicable law;

7.     Enter a declaratory judgment that Defendant, through its wrongful actions, has kept and continues to keep for itself, benefits that are due and owed to Plaintiff and members of the Classes;

8.     Award reasonable attorneys' fees and costs pursuant to applicable law; and

9.     Award such other relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff and members of the Classes hereby request a trial by jury.


Dated: March 24, 2020           /s/ Patricia M. Kipnis
                                Patricia M. Kipnis, N.J. Bar No. 016962003
                                **BAILEY GLASSER LLP**
                                923 Haddonfield Rd., Suite 307
                                Cherry Hill, NJ 08002
                                Telephone: 856-324-8219
                                pkipnis@baileyglasser.com

                                **CARNEY BATES & PULLIAM, PLLC**
                                Randall K. Pulliam – rpulliam@cbplaw.com
                                E. Lee Lowther III – llowther@cbplaw.com
                                (*pro hac* petition forthcoming)
                                519 W. 7th St.
                                Little Rock, AR 72201
                                Telephone: (501) 312-8500
                                Facsimile: (501) 312-8505